[No. 10203.   Department Two.   December 14, 1912.]

SPOKANE PORTLAND CEMENT COMPANY, *Appellant*, v. LEWIS LARSON *et al.*, *Respondents*.[1]

MINES AND MINERALS—LOCATIONS——ABANDONMENT—EVIDENCE—
SUFFICIENCY. The evidence fails to show a legal establishment of placer mining claims, where it is evident that no actual discovery was made, the locations were not properly perfected nor labor done in compliance with the requirements of Rem. & Bal. Code, § 7367, the claims were abandoned more than one year prior to the commencement of an action to recover possession, and from the whole record, it appears that the attempted location was a speculative venture to prevent the use and development of a water power by others.

SAME. The fact that the major part of defendant's improvements were made after plaintiff's action was commenced is immaterial, where no attempt was made by plaintiff to prevent extensive improvements made in good faith.

[1]Reported in 128 Pac. 641.

New Trial—Newly Discovered Evidence—Diligence. A new trial for newly discovered evidence is properly refused where there was no request for a continuance and no showing of diligence in procuring a witness who was found within a very few days after the trial.

Appeal from a judgment of the superior court for Stevens county, Carey, J., entered May 8, 1911, upon the verdict of a jury rendered in favor of the defendants by direction of the court, in an action of ejectment. Affirmed.

*John M. Gleeson* and *Joseph F. Morton,* for appellant.

*F. C. Robertson (Fred Miller* and *F. M. Goodwin,* of counsel), for respondents.

Crow, J.—Sullivan lake is situated in that portion of Stevens county which, since the commencement of this action, has been organized as Pend Oreille county. The lake is drained by a stream several miles in length, called Outlet creek, tributary to and discharged into the Pend Oreille river, near Metaline. About two miles below the lake, Outlet creek passes through a natural basin and thereafter continues its course through a gorge or canyon of great depth and narrow width. On November 17, 1906, George Walker and J. W. Ferguson, plaintiff's assignors, made two alleged placer mining locations in the basin near the gorge. It is now asserted that they then discovered valuable cement clay and gold on the claims. They also posted a notice of appropriation of one thousand cubic feet of water to be diverted from the lake and stream at or near the gorge, the same to be used for mining, manufacturing, electric and power purposes. On or about May 29, 1906, one Larson, predecessor of the defendant corporation, appropriated water from the stream and lake and later made a further appropriation which he followed by extensive surveys. His rights were thereafter transferred by mesne conveyances to the defendant corporation, which prior to the commencement of this action made additional surveys and projected improvements for the

development of a water power to be used in working certain
cement mining claims which it owned near Metaline, in manu-
facturing cement, and in developing electric power.   There
is some dispute as to whether any valuable improvements
were made by the defendant corporation prior to the com-
mencement of this action, but it appears from the evidence
that partly before and partly after the commencement of the
action and prior to trial, in making surveys and improve-
ments, in developing, diverting and using the water power,
and in constructing an electric plant and a manufacturing
plant near Metaline, it expended approximately $1,000,000.
On March 2, 1907, the president of the United States, by
proclamation, included within the Priest River Forest Re-
serve certain government lands which surrounded and in-
cluded Lake Sullivan, Outlet creek, and the alleged placer
claims involved in this action.   The defendant corporation
by proper procedure thereafter obtained permission from the
Federal authorities to raise Lake Sullivan, to construct dams,
drains, flumes, and ditches, to clear and flood certain public
lands, and to develop and use the water power which it now
claims within the forest reserve.   In pursuance of this au-
thority, it has proceeded with its development, improvements,
and works, and has paid and is paying an agreed compensa-
tion to the national government for the privilege granted.   In
its development of the water power, it constructed a dam at
the gorge or canyon on Outlet creek, which caused an artifi-
cial reservoir to be created over the basin in which the plain-
tiff's alleged placer claims are located, thereby submerging
such claims.   Plaintiff's predecessors, on behalf of themselves
and certain associates, also made or attempted to make what
they called an additional or amended location of two groups
of placer claims of 160 acres each, extending from the gorge
to Lake Sullivan, the same including the two original placer
locations under which plaintiff still claims its rights.   Fur-
ther facts, shown with much elaboration and detail, appear

in the record, but the above statement will enable us to consider the issues now before us.

This action was commenced on November 30, 1909, by Spokane Portland Cement Company, a corporation, successor in interest to Walker and Ferguson, against Lewis Larson, John Doe Larson, W. N. Miller, and the Inland Portland Cement Company, a corporation, to recover possession of the two placer mining claims which were not then submerged, but are now submerged by the artificial reservoir. Plaintiff alleged that the claims had been located by its predecessors in interest; that certain labor, including the building of a cabin, had been performed thereon, and that the defendants had wrongfully ousted plaintiff from possession. The defendants denied plaintiff's alleged rights, denied the alleged ouster, pleaded title to an extensive water right in the defendant corporation, pleaded the improvements made by it, and asked that its title be quieted. On a jury trial, and at the close of plaintiff's evidence, the motions of the defendants Walker and Miller for a nonsuit and order of dismissal were granted, and at the close of all the evidence the trial judge directed a verdict in favor of the defendant corporation, upon which judgment was entered, quieting its title to its water right and enjoining the plaintiff from interfering therewith. From this judgment and decree, the plaintiff has appealed.

Appellant insists that the trial court erred in granting the nonsuit, in withdrawing the case from the jury, in directing a verdict, and in refusing a new trial. With painstaking care we have examined the entire record, which is voluminous and intricate. Many immaterial questions of law and fact have been presented. We only find it necessary to consider whether the appellant corporation had any valid locations upon which to predicate its claim to a possessory right in and to the alleged placer mining claims. Although its predecessors made an alleged water appropriation, it neither developed the same, nor did it, within the time fixed

by Rem. & Bal. Code, § 6318, commence any excavation or construction of works by which it intended to divert the water. We do not understand that it now makes any claim to the water for any purpose other than working its alleged placer mining claims. In its reply brief, appellant says:

"The plain, cleancut question in this case is as to the rights of plaintiff to the two placer locations numbered one and two, at the time the respondents ousted it from possession by backing up the water of Sullivan creek so as to flood these claims."

It again says:

"A great many pages of the brief [respondents'] are given to water location. Nothing of this kind is involved in this suit. The only water spoken of by appellants is the water necessarily used in placer mining. That was the water spoken of when they said they wanted the water and naturally supposed that respondents' counsel knew something of placer mining and would understand that water is necessary in such cases."

These excerpts clearly state the controlling issue, which is whether appellant, at the time of the commencement of this action, held, or was entitled to the possession of, any valid placer mining claims from which it had been wrongfully ousted. We are convinced that it did not have any such rights; that no actual discovery was made; that its alleged locations were not properly perfected; and that labor upon the locations was not done in compliance with the requirements of Rem. & Bal. Code, § 7367. Assuming, however, that appellant's original locations and labor thereon were at the time sufficient, yet we conclude from all the evidence that their claims were thereafter abandoned. It is conceded that, for more than a year prior to the commencement of this action, no work had been done on any of the alleged claims, and that no application had been made to the forestry department by appellant for permission to develop or work the same. Appellant seeks to excuse these omissions by the contention that it was ousted and prevented from doing any

work by the respondent corporation, by other defendants herein, and by certain forest reserve agents or employees who ordered it and its predecessors to leave the forest reserve, and with threats of arrest and imprisonment forbade their return.    There is no competent evidence to show any ouster by respondents or any of the defendants herein, nor is there any competent proof that any other persons who thus forbade appellant or its predecessors from going upon and improving the claims was connected with the forestry department of the government, or that they had authority to interfere with appellant.    The entire record indicates that appellant's predecessors attempted to locate the alleged placer mining claims and appropriate the alleged water right as a speculative venture in an effort to prevent the respondent or any other persons from appropriating, developing, improving, or using the waters of the lake and stream; that neither appellant nor any of its predecessors made an honest effort to use the water power, to develop or improve the same, or to work any of their alleged placer mining claims. It further appears that the respondent corporation, prior to the commencement of this action, made extensive surveys; that it commenced improvements for diverting, developing, and using the water power; that it obtained a permit from the government, and that prior to the trial of this action it in good faith expended approximately $1,000,000 in such surveys, improvements and development. We fail to see that appellant is in any position to complain, as it does, that the major portion of this expenditure was made after the commencement of this action.    It does not appear that it made any attempt to enjoin or stop the improvements, nor is it shown that it pressed this action to an early trial.    The action was commenced on November 30, 1909, but was not tried until January 26, 1911.

Appellant further contends that the trial court erred in refusing a new trial, claimed on the ground of newly discovered evidence; or rather, for the discovery of an impor-

tant witness, one Hamilton, who it is claimed had performed labor on the alleged placer claims. No continuance had been asked on account of the absence of this witness, nor had any affidavit been presented disclosing what his testimony would be if he were present. He was found within a very few days after the trial, and we conclude that sufficient diligence to locate him prior to trial has not been shown. It further appears that no affidavit of labor which it is claimed was performed by him was ever recorded as required by statute. The trial judge did not abuse his discretion in refusing a new trial.

We find no prejudicial error in the record. The judgment is affirmed.

MOUNT, C. J., ELLIS, FULLERTON, and CHADWICK, JJ., concur.